1 | JACK S. SHOLKOFF, CA Bar No. 145097
jack.sholkoff@ogletreedeakins.com
2 | PATRICIA M. JENG, CA Bar No. 272262
patricia.jeng@ogletreedeakins.com
3 | OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
400 South Hope Street, Suite 1200
4 | Los Angeles, CA 90071
Telephone: 213.239.9800
5 | Facsimile: 213.239.9045

Attorneys for Defendant
CARMAX AUTO SUPERSTORES CALIFORNIA, LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRINIDAD HERRERA, TAROOB SIMANI and LUIS BERREGAN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>CARMAX AUTO SUPERSTORES CALIFORNIA, LLC, a Virginia limited liability company; and DOES 1 Through 25,<br><br>Defendants. | Case No.<br><br>**NOTICE OF REMOVAL TO U.S. DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA BY DEFENDANT CARMAX AUTO SUPERSTORES CALIFORNIA, LLC PURSUANT TO 28 U.S.C. §§ 1332, 1367, 1441 AND 1446**<br><br>[Filed concurrently with Defendant's Disclosure Statement and Certification As to Interested Parties; Notice of Related Cases; Declarations of Jack S. Sholkoff, Kim Holt, Tanisha Lewis-Andrews, Jennifer A. Domitrovits, in Support of Notice of Removal; USDC Civil Cover Sheet.]<br><br>Complaint Filed: March 12, 2014 |

# TABLE OF CONTENTS

|   |   | Page |
|---|---|---|
| I. | THE STATE COURT ACTION | 1 |
| II. | JURISDICTION UNDER THE CLASS ACTION FAIRNESS ACT | 2 |
|   | A. The Size of the Putative Class Exceeds 100. | 3 |
|   | B. The Parties Are Diverse. | 3 |
|   | C. Amount in Controversy Exceeds an Aggregate of $5,000,000.00 | 5 |
|   | (a) Plaintiffs' Claims for Failure to Pay Minimum Wage. | 8 |
|   | (b) Plaintiff's Claims For Penalties For Failure To Provide Accurate Wage Statements. | 10 |
|   | (c) Plaintiff's Claims Failure To Pay Overtime | 12 |
|   | (d) Plaintiff's Claims For Failure To Provide Meal and Rest Breaks. | 14 |
|   | (e) Plaintiff's Claim for Waiting Time Penalties | 17 |
|   | (f) Plaintiff's Claims For Attorneys' Fees | 19 |
|   | (g) Summary of CarMax's Calculations. | 20 |
| III. | CARMAX HAS SATISFIED THE REMAINING REMOVAL REQUIREMENTS. | 20 |

# TABLE OF AUTHORITIES

**Page(s)**
**FEDERAL CASES**

*Altamirano v. Shaw Indus., Inc.*
  C-13-0939 EMC, 2013 WL 2950600 (N.D. Cal. June 14, 2013) .................. 6, 11

*Cagle v. C & S Wholesale Grocers, Inc.*
  No. 2:13-CV-02134-MCE, 2014 WL 651923 (E.D. Cal. Feb. 19, 2014) .......... 6

*Doe v. D.M. Camp & Sons*
  No. CIV-F051417AWISMS, 2009 WL 921442 (E.D. Cal. Mar. 31, 2009) ..... 15

*Galt G/S v. JSS Scandinavia*
  142 F.3d 1150 (9th Cir. 1998) ........................................................................ 6

*Guglielmino v. McKee Foods Corp.*
  506 F.3d 696 (9th Cir. 2007) ................................................................. 6, 7, 19

*Handelsman v. Bedford Village Assocs., Ltd. Partnership*
  213 F.3d 48 (2d Cir. 2000) ............................................................................ 4

*Jasso v. Money Mart Express, Inc.*
  No. 11-CV-5500 YGR, 2012 WL 699465 (N.D. Cal. Mar. 1, 2012) ........ passim

*Johnson v. Columbia Props. Anchorage, LP*
  437 F.3d 894 (9th Cir. 2006) ........................................................................ 4

*Kanter v. Warner-Lambert Co.*
  265 F.3d 853 (9th Cir. 2001) ........................................................................ 3

*Kantor v. Wellesley Galleries, Ltd.*
  704 F.2d 1088 (9th Cir. 1983) ...................................................................... 3

*Marentes v. Key Energy Servs. Cal., Inc.*
  No. 1:13-CV-02067-LJOJLT, 2014 WL 814652 (E.D. Cal. Feb. 28, 2014) .... 18

*McCabe v. General Foods Corp.*
  811 F.2d 1336 (9th Cir. 1987) ...................................................................... 5

*Muniz v. Pilot Travel Ctrs. LLC*
  No. CIV. S-07-0325 FCD EFB, 2007 WL 1302504 (E.D. Cal. May 1,
  2007) ...................................................................................................... passim

*Quintana v. Claire's Stores, Inc.*
  No. 13-0368-PSG, 2013 WL 1736671 (N.D. Cal. Apr. 22, 2013) .......... 13, 19

*Ray v. Wells Fargo Bank, N.A.*
  No. CV 11-01477 AHM, 2011 WL 1790123 (C.D. Cal. May 9, 2011) ........ 13

*Rodriguez v. AT&T Mobility Servs. LLC*
  728 F.3d 975 (9th Cir. 2013) ..................................................................... 5, 6

*Sanchez v. Wal-Mart Stores, Inc.*
No. Civ. S-06-cv-2573 DFL KJM, 2007 WL 1345706 (E.D. Cal. May 8, 2007) .......................................................................................................... 6, 19

*Stevenson v. Dollar Tree Stores, Inc.*
No. CIV S-11-1433 KJM, 2011 WL 4928753 (E.D. Cal. Oct. 17, 2011) ......... 19

*Strotek Corp. v. Air Transport Ass'n of America*
300 F.3d 1129 (9th Cir. 2002) ............................................................................ 4

*The Hertz Corporation v. Friend*
130 S.Ct. 1181 (2010) ........................................................................................ 4

*Tompkins v. C&S Wholesale Grocers, Inc.*
No. 2:11-CV-02836-GEB, 2012 WL 639349 (E.D. Cal. Feb. 27, 2012) .......... 15

**CALIFORNIA CASES**

*Mamika v. Barca*
68 Cal.App.4th 487 (1998) .............................................................................. 18

**FEDERAL STATUTES**

28 U.S.C. § 1332(c) ............................................................................................... 4

28 U.S.C. § 1332(d) ............................................................................................... 2

28 U.S.C. § 1441(a) .......................................................................................... 5, 21

**CALIFORNIA STATUTES**

Cal. Civ. Proc. Code § 340(a) ............................................................................. 11

Cal. Lab. Code § 1194.2(a) ................................................................................. 10

**OTHER AUTHORITIES**

IWC Minimum Wage Order No. MW-2007 ........................................................ 9

IWC Wage Order No. 4-2001(9) .......................................................................... 9

**TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, AND TO PLAINTIFFS AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT**, Defendant CARMAX AUTO SUPERSTORES CALIFORNIA, LLC ("CarMax") removes this action from the Superior Court of the State of California for the County of Riverside, to the United States District Court for the Central District of California pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453, and on the following grounds:

## I. THE STATE COURT ACTION

1. On or about March 12, 2014, Plaintiffs Trinidad Herrera, Taroob Simani, and Luis Barragan, individually and on behalf of all others similarly situated (hereinafter "Plaintiffs") filed a Civil Complaint ("Complaint") in the Superior Court of the State of California, County of Riverside, entitled *Trinidad Herrera, Taroob Simani, and Luis Berregan, individually and on behalf of all others similarly situated, Plaintiffs, v. Carmax Auto Superstores California, LLC, a Virginia limited liability company; and Does 1 through 25, Defendants*, Case No. RIC1402410, which was assigned the case number BC 480768, in the Superior Court of Riverside County. Exhibit A contains, among other documents served upon CarMax, Plaintiffs' Complaint. (*See* Ex. A[1].)

2. On March 19, 2014, CarMax received via its registered agent for service of process a copy of the (i) Summons, (ii) Civil Case Cover Sheet, (iii) Notice of Department Assignment For Case Management Purposes and Case Management Conference, and (iii) Complaint in this action. A copy of each of the foregoing items is attached to this Notice of Removal as Exhibit A. (*Id.*) The documents attached as Exhibit A constitute all pleadings, process and other documents CarMax has

---

[1] Pursuant to Fed. R. Evid. Code 201(b)-(c), this Court may take judicial notice of the proof of service filed by Plaintiffs on March 26, 2014 (no docket number), indicating service effected March 19, 2014. The proof of service is attached hereto as part of Exhibit A.

3. Plaintiffs have not yet identified any of the fictitious "Doe" defendants identified in the Complaint.

4. The Complaint asserts claims for the following causes of action: (1) Violation of Labor Code section 1197 (Failure to Pay Minimum Wage); (2) Violation of Labor Code section 226(a) (Inaccurate Wage Statements); (3) Violation of Labor Code section 510 (Failure to Pay Overtime); (4) Violation of Labor Code sections 226,7 and 512(a) (Failure to Provide Meal and Rest Breaks); (5) Violation of Labor Code sections 201 and 202 (Failure to Pay Unpaid Wages at Time of Discharge); (6) Violation of Business & Professions Code sections 17200 *et seq.*; and (7) Conversion.

5. <u>This Notice is Timely.</u> This Notice of Removal is timely filed within 30 days of service of the Summons and Complaint upon CarMax.

## II. JURISDICTION UNDER THE CLASS ACTION FAIRNESS ACT

6. This action is one over which this Court has original jurisdiction under 28 U.S.C. § 1332 and is one which may be removed by CarMax pursuant to 28 U.S.C. §§ 1441 and 1453, in that the number of potential class members exceeds 100, the parties are citizens of different states, and the amount in controversy exceeds the aggregate value of $5,000,000.00. Pursuant to the Class Action Fairness Act ("CAFA"), Pub. L. No. 109-2 (enacted Feb. 18, 2005) (codified at 28 U.S.C. §§ 1332(d), 1453, 1711-1715), federal district courts have original jurisdiction over a class action if (1) it involves 100 or more putative class members, (2) any class member is a citizen of a state different from any defendant, and (3) the aggregated controversy exceeds $5 million. *See* 28 U.S.C. §§ 1332(d)(2) and (d)(6).

7. CarMax is the only named and served defendant in this matter. The consent of any other defendants is therefore inapplicable. In any event, this action may be removed solely by CarMax without the consent of other defendants pursuant to CAFA, 28 U.S.C. § 1453(a).

///

### A. The Size of the Putative Class Exceeds 100.

8. Plaintiffs' Complaint defines the class as consisting of the following:

> All current and former painters, detailers, mechanics and all other piece-rate employees employed by CarMax in California within the four years prior to the initiation of this action until the date that the class is certified. (Compl., ¶ 10.)

The Complaint alleges that there are approximately 900 members of the putative class. (*Id.*, ¶ 11(a).) CarMax's employment records show that the number of individuals who were and/or are employed as painters, detailers, mechanics, or other alleged piece-rate employees in California from March 12, 2010 to April 11, 2014 is **579** ("putative class members"). (Declaration of Jack S. Sholkoff ("Sholkoff Decl."), ¶ 8.).

### B. The Parties Are Diverse.

9. For diversity purposes, an individual is a "citizen" of the state in which he is domiciled. *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983). An individual's domicile is the place he resides with the intention to remain or to which he intends to return. *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).

10. <u>Citizenship of Plaintiffs</u>. Named Plaintiffs Trinidad Herrera, Taroob Slmani, and Luis Barragan are all residents of the State of California. (Compl., ¶¶ 1-3.) This action arises out of Plaintiffs' employment with CarMax in California. (*Id.*) During the entire period of employment with CarMax, named Plaintiffs have been employed in California, have each listed California address(es) as their place of residence, and, upon information and belief based on CarMax's records, are citizens of California. (Declaration of Jennifer Domitrovits ("Domitrovits Decl.") at ¶¶ 3-5.) The remaining plaintiffs, the members of the putative class, by definition, are or were employed in California as well. (Compl., ¶ 10.)

11. <u>Citizenship of Defendant CarMax</u>. At all times on or after the date this

action was filed, CarMax has been a citizen of Virginia and no other state. The Ninth Circuit treats limited liability companies like partnerships for purposes of diversity jurisdiction. *See Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006)(applying the standard used by sister circuits and treating LLCs like partnerships). Thus, "an LLC is a citizen of every state of which its owners/members are citizens." *Id.*; *see also Handelsman v. Bedford Village Assocs., Ltd. Partnership*, 213 F.3d 48, 51–52 (2d Cir. 2000)(recognizing that a limited liability company has the citizenship of its members). CarMax Auto Superstores California, LLC is a Virginia limited liability company with a sole member (CarMax Auto Superstores West Coast, Inc.) who is incorporated and has its principle place of business in Virginia. (Declaration of Tanisha Lewis-Andrews ("Lewis-Andrews Decl."), ¶¶ 2-3.) Pursuant to 28 United States Code § 1332(c), "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." The United States Supreme Court established the proper test for determining a corporation's principal place of business for purposes of diversity jurisdiction in *The Hertz Corporation v. Friend*, 130 S.Ct. 1181 (2010). The Supreme Court concluded that the "'principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities." *Id.* at 1184. The Court further clarified that the principal place of business is the place where the corporation "maintains its headquarters – provided that the headquarters is the actual center of direction, control, and coordination." *Id.*

12. For purposes of removal, diversity of citizenship is determined at the time the action is filed and at the time of removal. *Strotek Corp. v. Air Transport Ass'n of America*, 300 F.3d 1129, 1131 (9th Cir. 2002).

13. At all times on or after the date this action was filed, CarMax has been organized under the laws of the State of Virgnia. (Lewis-Andrews Decl. ¶ 2.)

14. At all times on or after the date this action was filed, CarMax's principal

place of business has been located in Virginia, where its corporate headquarters are located. (Lewis-Andrews Decl. ¶¶ 2-3.) Its administrative and executive functions are centralized in its corporate headquarters, where employees perform general administrative functions including payroll, legal, tax, benefits, and accounting. (*Id.*) Its highest corporate officers are located there. (*Id.*)

15. CarMax's corporate officers are also based at its corporate headquarters and direct, control, and coordinate the entity's activities from that location. (*Id.* ¶ 3.) at Its senior management is also employed there, and the highest officers are located in Richmond, Virginia. (*Id.*) Thus, CarMax's principal place of business is located in Virginia.

16. Accordingly, for purposes of determining diversity, CarMax is regarded as a citizen of Virginia.

17. <u>Citizenship of Doe Defendants.</u> The citizenship of fictitiously-named "Doe" defendants is disregarded for the purposes of removal. 28 U.S.C. § 1441(a); *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987).

### C. **Amount in Controversy Exceeds an Aggregate of $5,000,000.00.**

18. Plaintiffs have not alleged a specific amount in controversy in the Complaint. In order to remove a class action pursuant to CAFA, the amount in controversy must exceed $5,000,000, and it is the removing party's burden to establish, "by a preponderance of evidence, that the aggregate amount in controversy exceeds the jurisdictional minimum." *Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 981 (9th Cir. 2013). To do so, the removing defendant must "produce underlying facts showing only that it is *more likely than not* that the amount in controversy exceeds $5,000,000.00, assuming the truth of the allegations plead in the Complaint." *Muniz v. Pilot Travel Ctrs. LLC*, No. CIV. S-07-0325 FCD EFB, 2007 WL 1302504, at *5 (E.D. Cal. May 1, 2007)(emphasis in original).

19. In considering the evidence submitted by the removing defendant, the Court must "look beyond the complaint to determine whether the putative class

action meets the [amount in controversy] requirements" adding "the potential claims of the absent class members" *and attorneys fees*. *Rodriguez*, 728 F.3d at 981 (citing *Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345, 185 L. Ed. 2d 439 (2013)); *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 705 (9th Cir. 2007). Furthermore, "[i]n considering whether the amount in controversy is clear from the face of the complaint, a court must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the complaint." *Altamirano v. Shaw Indus., Inc.*, C-13-0939 EMC, 2013 WL 2950600, at *4 (N.D. Cal. June 14, 2013) (citing *Korn v. Polo Ralph Lauren Corp.*, 536 F.Supp.2d 1199, 1205 (E.D. Cal. 2008)); *see also Muniz*, 2007 WL 1302504, at *3.

20. Any calculation of the "aggregate amount in controversy" for purposes of CAFA may properly include all potential damages recoverable by the plaintiffs based on the claims asserted in the complaint. *Muniz*, 2007 WL 1302504, at *3. Such calculations should also include attorneys' fees to the extent the plaintiffs seek to recover them in the complaint. *See, e.g., Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998)("We hold that where an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy."); *Cagle v. C & S Wholesale Grocers, Inc.*, No. 2:13-CV-02134-MCE, 2014 WL 651923, at *10 (E.D. Cal. Feb. 19, 2014)(declaring that "attorney's fees may also be considered in determining the amount in controversy if such fees are recoverable by plaintiff, either by statute or by contract"); *Sanchez v. Wal-Mart Stores, Inc.*, No. Civ. S-06-cv-2573 DFL KJM, 2007 WL 1345706, at *2 (E.D. Cal. May 8, 2007) (holding that, in a CAFA action, attorneys' fees are part of the amount in controversy calculation).

21. While CarMax denies the validity of Plaintiffs' claims and requests for relief, and does not concede in any way that the allegations in the Complaint are accurate, that Plaintiffs' claims are amenable to classwide treatment, or that Plaintiffs or the purported class are entitled to any of the requested relief, the allegations in the

Complaint show it is more likely than not that the amount in controversy exceeds the jurisdictional minimum. *See Guglielmino*, 506 F.3d at 700 (citing *Abrego Abrego and Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398 (9th Cir.1996)).

22. As described further below, as well as in the concurrently filed declarations from CarMax and its counsel[2], the amount in controversy exceeds $5,000,000. In particular, the following amounts are in controversy in this matter as a result of the claims alleged in Plaintiffs' putative class action Complaint:

| Claim | Amount in Controversy |
|---|---|
| Failure to Pay Minimum Wage | $ 1,015,513 |
| Liquidated Damages for Failure to Pay Minimum Wage | $ 1,015,513 |
| Failure to Provide Accurate Wage Statements | $ 935,400 |
| Failure To Pay Overtime | $ 1,399,510 |
| Failure To Failure to Provide Meal Periods | $ 933,007 |
| Failure to Provide Rest Periods | $ 933,007 |
| Failure to Pay Wages Upon Termination | $516,862 |
| Attorneys' Fees | $1,220,699 |
| TOTAL | $7,969,511 |

---

[2] For purposes of effecting removal pursuant to 28 U.S.C. § 1332(d), declarations from CarMax and its counsel constitute sufficient evidence to establish the amount in controversy. See, e.g., *Muniz*, 2007 WL 1302504, at *2, *5 (relying on the evidence submitted by the defendant in the form of a declaration from its employee relations manager, which "set forth the underlying facts needed to calculate the amount in controversy," and a declaration from its counsel, which calculated the amount in controversy based on the underlying facts and in light of the laws governing the plaintiff's claims, and finding that the defendant had shown that "it is more likely than not that the jurisdictional threshold of $5,000,000.00 is met"); *Jasso v. Money Mart Express*, Inc., No. 11-CV-5500 YGR, 2012 WL 699465, at *4 (N. D. Cal. Mar. 1, 2012) (finding there was "adequate foundation" for the declaration submitted by the defendant's human resources director regarding "the numbers of employees, payperiods {sic} and average rates of pay during the applicable limitations periods," which was derived from a compilation of "information that is kept in the normal course of business," and relying on the declaration to find that the defendant had met its burden to establish the amount in controversy in excess of CAFA's jurisdictional threshold).

(*See* Sholkoff Decl., ¶¶ 11, 18, 22, 28, 33, 34, 37, 39, 40 & Ex. C.)

        **(a)   Plaintiffs' Claims for Failure to Pay Minimum Wage.**

    23.    In the First Cause of Action, Plaintiffs allege that they were "**only compensated** while they were performing piece-rate work," but not for other times they were "under [CarMax's] control but were and are not able to earn piece-rate compensation." (Compl., ¶¶ 16-17.)(emphasis added) Specifically, Plaintiffs allege that although they were required to be at work "for at least a full eight-hour shift," CarMax did not compensate them and other putative class members for time they "were required to be at [CarMax's] place of business" but 1) "**before their first [piece rate] job of each day**," 2) "**between jobs…of each day**," 3) "time they spent **after their last job of the day** before the end of **each shift**," ("Non-Production Hours")(Compl., ¶ 17.)(emphasis added)

    24.    Plaintiffs allege that within the "four years[3] prior to the initiation of this action until the date that the class is certified," CarMax "adopted and maintained uniform **policies, practices, and procedures governing…the payment of wages to [] Plaintiffs and the rest of the class.**" (Compl., ¶¶ 10, 14.)

    25.    <u>Non-Production Hours</u>. Based on CarMax's records, between March 12, 2010 and April 11, 2014[4], the putative class members have collectively recorded a total of 81,024.46 Non-Production Hours. (Sholkoff Decl., ¶ 13.) Because Plaintiffs have alleged that they were "only compensated" while they were

---

[3] Because Plaintiffs' Complaint also includes a cause of action for unfair competition under California Business & Professions Code Section 17200, *et seq.* ("Section 17200") – which is based, in part, on injuries Plaintiffs allegedly suffered as a result of CarMax's purported "failure to compensate Plaintiffs…at a rate of at least two times the minimum wage when…not engaged in piece-rate labor," (Compl., ¶ 37(a); Sholkoff Decl., ¶ 12) – Plaintiffs' minimum wage claims are subject to a four-year statute of limitations. *See, e.g., Jasso*, 2012 WL 699465, at *4.

[4] Because CarMax's business records used for the analysis contained herein were obtained by CarMax's counsel on April 11, 2014, the number of non-productive hours does not account for any non-productive hours recorded by putative class members between April 11, 2014 and April 17, 2014 (the date of removal). The exclusion of the non-productive hours recorded by putative class members between April 11, 2014 and April 17, 2014 has the effect of decreasing the potential amount in controversy because the higher number of non-productive hours, which are allegedly uncompensated, the higher amount of damages.

performing alleged piece-rate work, 81,024.46 is the estimated amount of total number of hours for which CarMax allegedly did not compensate the putative class members from March 12, 2010 to the time of removal. Putative class members who were Automotive Technicians recorded 51,680.25 Non-Production Hours, and the other putative class members (i.e., not Automotive Technicians) recorded 29,344.21 total Non-Production Hours. (Sholkoff Decl., ¶ 13..)

26. <u>Minimum Wage</u>. Plaintiffs have alleged that they are entitled to unpaid wages based on a rate that is "two times the applicable minimum wage." (Compl., ¶ 17.) The applicable minimum wage is $8.00 per hour, so two times the applicable minimum wage is $16.00 per hour. *See* IWC Minimum Wage Order No. MW-2007. Although Plaintiffs have put at issue unpaid wages based on a rate of $16.00 per hour for all putative class members, CarMax has calculated the amount in controversy utilizing a rate of $16.00 per hour *only* for Automotive Technicians[5], and utilizing the minimum wage rate of $8.00 per hour for all other putative class members. (Sholkoff Decl., ¶¶ 15-16.) The calculation of the amount in controversy using a rate of $8.00 per hour for all putative class members *except* Automotive Technicians has the effect of decreasing the amount in controversy, and results in a lower amount than if using the rate Plaintiffs have put at issue in their Complaint.

27. Utilizing two times the applicable minimum wage of $16.00 per hour for Automotive Technicians, and a conservative $8.00 per hour for all other putative class members, the amount of unpaid Non-Production Hours is **$1,015,513.**

---

[5] CarMax's counsel calculated the amount in controversy using the rate of $16.00 per Non-Production Hour for Automotive Technicians because the Automotive Technicians were required to bring their own tools. (Sholkoff Decl., ¶¶ 14-15); (Declaration of Karen Holt ("Holt Decl."). "When tools or equipment are required by the employer or are necessary to the performance of a job, such tools and equipment shall be provided and maintained by the employer, except that an employee whose wages are at least two (2) times the minimum wage provided herein may be required to provide and maintain hand tools and equipment customarily required by the trade or craft." IWC Wage Order No. 4-2001(9). Although Plaintiffs have put at issue an amount based on a rate of $16.00 per hour for *all* putative class members (Compl., ¶ 17), for the remaining putative class members, CarMax has conservatively applied the rate of $8.00 per hour.

1  (Sholkoff Decl., ¶ 11 & Ex. C.)

2      28.   <u>Liquidated Damages</u>. In addition to wages for Non-Production Hours, Plaintiffs allege that they are entitled to recover "liquidated damages under Labor Code Section 1194.2, interest thereon, together with their reasonable attorneys' fees and costs." (Compl., ¶ 17.)

    29.   The liquidated damages amount in controversy is "an amount equal to the wages unlawfully unpaid and interest thereon." Cal. Lab. Code § 1194.2(a). Because the amount of wages allegedly unpaid, as described above, is $1,015,513, the liquidated damages amount in controversy is **$1,015,513**. (Sholkoff Decl., ¶ 18 & Ex. C.)

    **(b)   Plaintiff's Claims For Penalties For Failure To Provide Accurate Wage Statements.**

    30.   Plaintiffs allege that CarMax's "**uniform policies, practices and procedures**" governing the "payment of wages…violated California's labor laws." (Compl., ¶ 14.)(emphasis added) In their Second Cause of Action, Plaintiffs seek relief for CarMax "**knowingly and intentionally**" failing to provide "accurate itemized wage statements to Plaintiffs and the members of the Class" in violation of Labor Code Section 226, and that the putative class members "**suffered injury** as a result." (Compl., ¶ 20.)(emphasis added) Plaintiffs allege that "during the Class period[6] …[CarMax] failed to provide such accurate itemized wage statements…in that, among other things, such statements failed to show the number of flag hours worked, and also failed to show accurately all hours worked, the gross and net wages earned and all applicable hourly rates." (Compl., ¶ 20.)

    31.   Plaintiffs allege that based on these and other allegations in the Complaint, Plaintiffs and putative class members are therefore "entitled to recover" statutory penalties, under Labor Code Section 226(e), "the greater of their actual

---

[6] Plaintiffs have defined "Class Period" as "four years prior to the initiation of this action until the date that the class is certified." (Compl., ¶ 10.)

NOTICE OF REMOVAL TO U.S. DISTRICT COURT